STATE OF NORTH CAROLINA v. RANDY GREENSBURY RIDGEWAY, DEFENDANT

No. COA06-1162

(Filed 21 August 2007)

**1. Appeal and Error— correction of judgment after appeal— authority of trial court**

The trial court was without jurisdiction to change the original judgment, even to correct a clerical error, while the matter was pending on appeal. A motion for appropriate relief was granted and the amended judgments were vacated and remanded for correction of the clerical error.

**2. Venue— pretrial publicity—denial of change**

The trial court properly denied defendant's motion to change venue or for a special venire in a prosecution for murder, rape and sexual offenses against his girlfriend's daughter. The jury selection process effectively screened out any jurors who might have been influenced by pretrial publicity, and defendant indicated that he was satisfied with the jury. He did not demonstrate such widespread and pervasive prejudice in the community that he could not receive a fair trial before the jurors who were selected.

**3. Constitutional Law— right to counsel—resumption of questioning after request**

Defendant's right to counsel was protected when officers resumed questioning defendant after he inquired about an attorney. The unchallenged findings support the conclusion that defendant never unequivocally requested an attorney during his early custodial interrogation and that none of his state or federal constitutional rights had been violated.

STATE v. RIDGEWAY

[185 N.C. App. 423 (2007)]

## 4. Confessions and Incriminating Statements— spontaneous statement—admissible

The trial court correctly admitted a spontaneous incriminating statement defendant made to officers while en route to have dental impressions made where the unchallenged findings were that no questions were posed, no threats or promises induced the statement, and defendant seemed to understand what he was doing.

## 5. Appeal and Error— preservation of issues—failure to cite authority—contention abandoned

Defendant did not cite authority on appeal and abandoned his contention that his written statement should not have been admitted because officers provided the means and opportunity for him to make the statement before he was advised of his rights.

## 6. Evidence— defendant in jail during trial—admission not plain error

There was no plain error in allowing testimony to the fact that defendant had been incarcerated on the charges in this case. His strategy was to admit multiple Class B felonies versus first-degree murder; any reference to defendant being in jail during the trial could not have caused the jury to convict when they otherwise would not have.

## 7. Evidence— items found at scene—supportive of reasonable inference

The trial court did not err by admitting a knife and a condom found at the scene of a sexual assault and murder where the evidence supported a reasonable inference that defendant had decided that he had little to lose by acting on his impulses toward the victim, and defendant stated that he had initially intended to use the condom when he assaulted the victim and intended to use the knife to kill the victim's mother when she got home.

## 8. Rape; Sexual offenses— murder-single transaction

There is sufficient evidence to support sex offense convictions even if it is not clear that the victim was alive when the sex offenses were committed when the crimes were part of a continuous chain of events. Here, there was sufficient evidence to support a conclusion that defendant's physical abuse, rape, and sexual offenses against his girlfriend's daughter occurred as part of a single transaction, and his motion to dismiss for insufficient evidence was properly denied.

**9. Rape; Sexual Offenses— statutory and forcible theories—consolidated judgments—arrest of judgment on one count**

Judgment was arrested on one count of first-degree rape and one count of first-degree sexual offense where the jury found defendant guilty of rape on theories of statutory and forcible rape and found defendant guilty of sexual offense on theories of statutory and forcible sexual offense, even though the trial court consolidated the convictions for statutory and forcible rape in a single judgment and consolidated the convictions for statutory and forcible sexual offense in a single judgment, because separate convictions for those offenses, even when consolidated in a single judgment, have potentially severe adverse collateral consequences.

**10. Rape; Sexual Offenses— assault to gratify desire—evidence sufficient**

There was sufficient evidence that defendant assaulted his victim for the purpose of arousing or gratifying sexual desire.

**11. Appeal and Error— preservation of issues—assignment of error—supporting authority required**

An assignment of error was deemed abandoned where defendant did not cite authority to support his argument.

**12. Homicide— felony murder—multiple underlying felonies—one arrested**

There was no plain error where the trial court arrested judgment on one of five felonies supporting felony murder. Where the trial court's jury instructions did not specify which of the multiple felonies were to be considered as the underlying felony for purposes of the felony murder conviction, it was within the trial court's discretion to select which felony conviction would serve as the underlying felony.

Defendant appeals from judgments dated 6 October 2005 by Judge Michael E. Beale in Davie County Superior Court. Heard in the Court of Appeals 5 June 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*McCotter, Ashton, & Smith, P.A., by Rudolph A. Ashton, III, and Kirby H. Smith, III, for defendant.*

BRYANT, Judge.

Randy Greensbury Ridgeway appeals from judgments dated 6 October 2005 consistent with jury verdicts finding him guilty of first degree (felony) murder, first degree rape, statutory rape, first degree sex offense, statutory sex offense, sex offense in a parental role, indecent liberties with a minor and felony child abuse. For the murder conviction, defendant was sentenced to life imprisonment without parole. The remaining charges were consolidated and defendant was sentenced to a minimum of six hundred five months and a maximum of seven hundred fifty-four months imprisonment to run consecutively.

D.K. (Debi)[1] was a fourteen-year-old high school student who was raped, sodomized and murdered by defendant, her mother's live-in boyfriend. Defendant admitted that he murdered Debi by repeatedly hitting her in the head with a hammer. The State's evidence tended to show defendant was having sexual feelings toward Debi in the months prior to murdering Debi. Defendant told investigators Debi had "come on" to him in the past, that she had a certain way of flirting, that she had talked to him about her breasts and wanting to sleep in the same bed with him. Defendant's relationship with Debi's mother had deteriorated to the point that defendant slept on the living room sofa and had planned to move out.

On 21 September 2004, Debi's mother returned home from work at about 11:20 p.m. to find defendant lying on the couch and he appeared to be sleeping. Upon entering Debi's room, her mother found Debi unresponsive, her body felt cold and her blonde hair was completely red with blood. After attempting to resuscitate Debi, her mother called 911. EMS responded and transported Debi to the hospital where she was pronounced dead.

An autopsy was performed on Debi, documenting her significant injuries. There were multiple human bite marks all over her body, including her pubic area, chin, upper right thigh, and between her breasts. According to experts for both defendant and the State, Debi was alive at the time she was bitten by defendant. Debi's vaginal area and rectum were severely bruised and torn. DNA evidence extracted from Debi's vagina and rectum matched defendant's and a soft tissue analysis revealed Debi was alive when she sustained these injuries. Although the State's evidence indicated Debi was alive when she sustained the injuries to her vagina and rectum, defendant claimed he

---

1. Initials and pseudonyms are used to protect the identity of minor child victim.

sexually assaulted Debi after she was dead in an attempt to make it look as though someone else had committed the crime. After sustaining multiple injuries, Debi died of blunt force trauma to the head.

At the crime scene, investigators found evidence indicating an attempt to sanitize the scene. Evidence found in the master bedroom included a hammer, a large knife and a partially unrolled condom. Defendant gave several statements, confessing that he murdered Debi with a hammer. Additionally, defendant admitted he left a knife in the master bedroom because he intended to kill Debi's mother when she got home.

At trial, defendant was acquitted of first degree murder based upon premeditation and deliberation, but convicted of first degree murder under the felony murder rule. The jury further convicted defendant of all remaining charges and recommended sentencing defendant to life imprisonment without parole on the first degree murder conviction. The trial court sentenced defendant on the first degree murder conviction, and arrested judgment on the felonious child abuse with a deadly weapon conviction pursuant to the felony murder rule. As to the remaining convictions, defendant stipulated he was a prior record level II for sentencing purposes. The trial court consolidated the statutory rape and forcible rape convictions and sentenced defendant to 288 to 355 months imprisonment on those charges. The trial court consolidated the statutory sexual offense and forcible sexual offense convictions and sentenced defendant to an additional 288 to 355 months imprisonment. The trial court ordered both the sexual offense and murder convictions to run at the expiration of the sentence in the rape cases. The sexual offense in a parental role and indecent liberties charges were consolidated and defendant was sentenced to twenty-nine to forty-four months imprisonment, to run at the expiration of the sentence on the sexual offenses. Defendant appeals.

Defendant argues the trial court erred by: (I) denying his motion for change of venue or special venire; (II) denying his motion to suppress statements to law enforcement; (III) admitting testimony that defendant was in jail on these charges; (IV) admitting evidence that a knife and condom were found at the crime scene; (V) denying defendant's motions to dismiss; and (VI) arresting judgment on only one of the felony convictions used to support his felony murder conviction.

[1] Defendant has filed a motion for appropriate relief (MAR) with this Court, and states the original judgments appearing in the record

on appeal for second degree rape (04 CRS 3370) and for second degree sex offense (04 CRS 3372) were correct. Defendant states the amended copies that later became an exhibit to the record upon the State's motion, are in error. The State, in its response to defendant's MAR, concedes that while the transcript indicates defendant was found guilty and convicted of first degree rape and first degree sex offense, the trial court's attempt to correct its clerical error *after this matter was pending on appeal* with this Court was error. We agree. The trial court was clearly without jurisdiction to change the original judgment, even to correct a clerical error, while this matter was pending appeal. *See In re J.L.B.M.*, 176 N.C. App. 613, 628, 627 S.E.2d 239, 248 (2006) ("Once the record on appeal has been filed with an appellate court, the trial court is divested of jurisdiction to correct a clerical error."). Accordingly, we allow defendant's MAR and vacate the amended judgments in 04 CRS 3370 and 04 CRS 3372 and remand for correction of the clerical error. *Id.*

I

**[2]** Defendant argues the trial court erred by denying his motion for change of venue or special venire. In support of his argument defendant states there had been six news articles in area newspapers about the case and a local lawyer had been involved in a discussion about the case with some of her church members who felt defendant was obviously guilty.

A trial court must either transfer the case to another county or order a special venire from another county if there exists so great a prejudice against the defendant in the county in which he is charged that he cannot obtain a fair and impartial trial. N.C. Gen. Stat. § 15A-957 (2005); *State v. Bonnett*, 348 N.C. 417, 502 S.E.2d 563 (1998), *cert. denied*, 525 U.S. 1124, 142 L. Ed. 2d 907 (1999). Defendant must establish that "it is reasonably likely that prospective jurors would base their decision in the case upon pretrial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." *Bonnett*, 348 N.C. at 428, 502 S.E.2d at 571 (citations and quotations omitted). Moreover, even when "it is clear that a large number of potential jurors was exposed to information about the case through the media," our Supreme Court "has consistently held that factual news accounts of the crimes and pretrial proceedings are not sufficient to establish prejudice against a defendant." *State v. Wallace*, 351 N.C. 481, 512, 528 S.E.2d 326, 346 (2000). Defendant must establish specific and identifiable prejudice against him as a result of

pretrial publicity by showing, *inter alia,* that jurors with prior knowledge decided the case, that he exhausted his peremptory challenges, and that a juror objectionable to him sat on the jury. *Id.* The determination of whether a defendant has carried his burden is within the sound discretion of the trial court, and absent a showing of abuse of discretion, its ruling will not be overturned on appeal. *State v. Madric,* 328 N.C. 223, 226-27, 400 S.E.2d 31, 33-34 (1991).

In this case, the jury selection process effectively screened out any jurors who might have been influenced by pretrial publicity. Juror questionnaires were utilized and each potential juror was questioned about media exposure and potential prejudice. The record reflects that every juror among those ultimately selected either indicated that they had no prior knowledge of the case or, if they had prior knowledge, expressly stated that they could decide the case solely on the evidence presented at trial. During jury selection, potential jurors were excused for cause each time they indicated any possibility that they might be influenced by something they had seen or heard about the case. Jurors were asked if they could keep an open mind about considering second degree murder and were dismissed for cause if they indicated that they would have a hard time considering second degree murder, rather than first degree. *See Wallace,* 351 N.C. at 511, 528 S.E.2d at 345 (Our Supreme Court "has repeatedly emphasized that the best and most reliable evidence as to whether existing community prejudice will prevent a fair trial can be drawn from prospective jurors' responses to questions during the jury selection process.") (citations and quotations omitted). The record reflects that a fair and impartial jury was selected in this case. Defendant indicated he was satisfied with the jury at the conclusion of the jury selection process and did not renew his motion. Defendant has not demonstrated such "widespread and pervasive prejudice in the community" that defendant could not receive a fair trial before jurors selected from that jurisdiction. The trial court properly denied defendant's motion to change venue or for special venire. This assignment of error is overruled.

II

Defendant argues the trial court erred by denying his motion to suppress three statements made to law enforcement: defendant's inquiry about an attorney; statements made while en route to the dentist; and a written statement.

"It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's

findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan,* 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quotation omitted). Conclusions of law which are supported by findings of fact are binding on appeal. *State v. Golphin,* 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000), *cert. denied,* 532 U.S. 931, 149 L. Ed. 2d 305 (2001). The trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found. *Id.* Where the trial court's findings of fact are supported by the evidence and in turn support its conclusions of law, defendant's assignments of error should be overruled. *See State v. Jones,* 161 N.C. App. 615, 589 S.E.2d 374 (2003), *appeal dismissed and disc. rev. denied,* 358 N.C. 379, 597 S.E.2d 770 (2004).

## Inquiry About an Attorney

**[3]** Defendant contends his right to counsel was not protected where officers purportedly did not make sufficient inquiry before resuming questioning after defendant inquired about an attorney. In the order on defendant's motion to suppress, the trial court made detailed findings of fact based on evidence presented at the suppression hearing. The trial court also made "findings of ultimate facts relating to the ultimate issues in these Motions." The findings pertinent to this issue were:

> That the defendant was fully advised of his Fifth Amendment Miranda rights by Agent Lloyd Terry and freely, voluntarily and understandingly waived those rights. That the defendant's inquiry about a public defender during the interview was not an unambiguous, unequivocal request to talk to an attorney; that despite being advised that talking to an attorney was his decision and being given an opportunity by Agent Terry to make an unequivocal request, the defendant voluntarily continued the interview. That all of the defendant's statements during the interview were made freely, voluntarily, understandingly, without any promises, threats, coercions or inducement by Agent Terry or Detective Stephens.

None of the trial court's findings of fact have been challenged by defendant or assigned as error on appeal; these findings of fact are conclusive on appeal. *See Buchanan,* 353 N.C. at 336, 543 S.E.2d at 826. The trial court's findings of fact in turn support its conclusion of law that defendant never unequivocally requested an attorney during his early custodial interrogation and that none of defendant's state or

**STATE v. RIDGEWAY**

[185 N.C. App. 423 (2007)]

federal statutory or constitutional rights had been violated. This conclusion of law is legally correct and reflects a correct application of applicable legal principles to the facts found; therefore, it, too, is binding on appeal. *See Golphin*, 352 N.C. at 409, 533 S.E.2d at 201 (a suspect must unambiguously request counsel to warrant the cessation of questions and must sufficiently and clearly articulate his desire to have counsel present such that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney).

Statement En Route to the Dentist

**[4]** Defendant argues the trial court should have suppressed the brief spontaneous statement defendant made to officers while en route to have dental impressions made. The trial court's unchallenged finding of facts as to this statement were:

77. On the way to the dentist's office the defendant, without any questions being posed of him by Detective Stephens or Special Agent Terry stated, "I do not know why you are doing this, I told you that I did it."

78. At the time that the defendant made this statement in the presence of Detective Stephens and Special Agent Terry, the defendant appeared to be acting normally and to understand what he was doing and no promises or threats were made to induce the defendant's statement. These unchallenged findings of fact support the trial court's conclusion of law that none of defendant's state or federal statutory or constitutional rights were violated when the statement was made.

The trial court properly concluded that defendant's spontaneous statement was admissible. *See State v. Penley*, 318 N.C. 30, 47, 347 S.E.2d 783, 793 (1986) (finding an assignment of error to be feckless where the evidence in the record showed the defendant's statement was spontaneous and that no interrogation in any form occurred at that time); *State v. Duers*, 49 N.C. App. 282, 286, 271 S.E.2d 81, 83 (1980) (holding appellate court bound by the trial court's findings, which were supported by the evidence, that defendant's custodial statement was spontaneously and voluntarily made by the defendant and therefore admissible), *disc. rev. denied*, 302 N.C. 220, 276 S.E.2d 917 (1981).

Written Statement

**[5]** Defendant was advised and expressly waived his rights prior to giving officers the statement at issue here. Defendant argues, however, the statement should have been suppressed because the detectives "provided the means and opportunity for said statement to be written prior to the defendant being advised of his rights." Defendant maintains that because the officers provided defendant with writing instruments and put him in a single cell, they should not have been allowed to accept his written statement, even. though they fully advised defendant of his rights before he turned it over to them. Defendant cites no authority to support this contention; the issue therefore is deemed abandoned. *See State v. Alston*, 341 N.C. 198, 224, 461 S.E.2d 687, 700 (1995) (holding that an assignment of error is deemed abandoned if the appellant does not "cite reasonable authority in its support"), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996). These assignments of error are overruled.

III

**[6]** Defendant argues the trial court committed plain error in allowing witness testimony and references during trial to the fact that defendant had been incarcerated on these charges. We disagree.

Defendant must show the alleged error caused the jury to convict defendant when they otherwise would not have. *See State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987) (explaining that "plain error" is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached"), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988). At trial, defendant admitted he had committed acts sufficient to constitute second degree murder, rape, sexual offense, and indecent liberties. Defendant's strategy here was an admission that he should be convicted of multiple Class B felonies versus first degree murder. In light of this strategy, any reference to defendant being in jail during trial could not have amounted to plain error. This assignment of error is overruled.

IV

**[7]** Defendant argues the trial court erred by admitting evidence of a knife and a condom found at the crime scene. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. N.C.

Gen. Stat. § 8C-1, Rule 401 (2005). "We have interpreted Rule 401 broadly and have explained on a number of occasions that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994). The evidence tended to show defendant's relationship with Debi's mother was ending badly, that defendant had recently been experiencing sexual tension with Debi and had been asked to leave the home. The evidence supported a reasonable inference that defendant decided that he had little to lose by acting on his impulses toward Debi, and by murdering both Debi and her mother. This theory was supported by defendant's statements that he had initially intended to use the condom when he assaulted Debi, and that he had left the knife in the master bedroom because he intended to kill Debi's mother when she got home. The knife further tended to corroborate the State's evidence that the victim's bra was cut in the front. Defendant has failed to establish prejudice that the admission of such evidence found at the crime scene was in error. These assignments of error are overruled.

## V

**[8]** Defendant argues the trial court erred in denying his motion to dismiss for insufficiency of the evidence. When determining the sufficiency of the evidence to support a charged offense, we must view the evidence "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). If the evidence supports a reasonable inference of defendant's guilt based on the circumstances, then it is for the jurors to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty. *State v. Trull*, 349 N.C. 428, 447, 509 S.E.2d 178, 191 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999). When a defendant commits sex offenses in conjunction with a murder as part of a continuous chain of events, forming one continuous transaction, there is sufficient evidence to support the defendant's sex offense convictions even if it is unclear whether the victim was alive or dead when the sex offenses were committed. *See State v. Wilkinson*, 344 N.C. 198, 215-16, 474 S.E.2d 375, 384-85 (1996). "This Court, on numerous occasions, has held that to support convictions for a felony offense and related felony murder, all that is required is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction." *State v. Thomas*, 329 N.C. 423, 434-35, 407 S.E.2d 141, 149 (1991).

In the light most favorable to the State the evidence tended to show defendant attacked Debi over a period of hours. Defendant's expert testified various wounds were inflicted while Debi was alive. The evidence showed defendant raped Debi vaginally and anally while she was alive, leaving semen inside both her vagina and anus. Defendant's expert indicated the evidence from Debi's lung tissue showed Debi was alive for a substantial period of time after the brain injury was inflicted. After hitting Debi in the head, defendant walked around thinking about how to cover up the crime, attempted to clean Debi up, and then sexually assaulted her body—all part of the same episode. There was sufficient evidence to support a conclusion the physical abuse, rape, and sexual offense occurred as part of a single transaction. The trial court properly allowed the jury to review the evidence of defendant's commission of the crimes of rape and sexual offense under both a theory of statutory rape/sexual offense and forcible rape/sexual offense. These are alternative theories under which the jury could find defendant guilty of rape and sexual offense. *See State v. Millsaps*, 356 N.C. 556, 560, 572 S.E.2d 767, 770 (2002) ("The crime is first-degree murder. Premeditation and deliberation and felony murder are theories which the State may use, pursuant to N.C.G.S. § 14-17, to convict a defendant of first-degree murder. However, a defendant is convicted of the crime, not of the theory."). The prosecutor argued to the trial court that the State should be allowed to present both theories to the jury and that "any issues as to double jeopardy and merger should be considered after the jury has spoken with regard to the elements which it found on the statutory and forcible sexual offense and rape charges." The trial court properly submitted both theories for the jury's consideration.

**[9]** However, upon the jury's verdicts of guilty under both theories, judgment must be arrested on one count of first degree rape and on one count of first degree sexual offense. In *Etheridge*, the North Carolina Supreme Court stated:

> Where, as here, a single criminal transaction constitutes a violation of more than one criminal statute, the test to determine if the elements of the offenses are the same is whether each statute requires proof of a fact which the others do not . . . . If neither crime constitutes a lesser included offense of the other, the convictions will fail to support a plea of double jeopardy.

*State v. Etheridge*, 319 N.C. 34, 50, 352 S.E.2d 673, 683 (1987) (holding that convictions of three separate offenses all arising out of

the "same criminal transaction" did not violate double jeopardy and upholding defendant's convictions of statutory rape, incest, and taking indecent liberties with a child for each episode of intercourse with his daughter) (internal citations omitted). Under the original statutes for rape and sexual offense, a plain reading of the statutes shows the legislative intent was to provide alternate methods by which the State can prove the crimes of rape or sexual offense: intercourse or a sexual act with a child under 13 or intercourse or a sexual act with any person by force and against the will. *See* N.C.G.S. §§ 14-27.2, 14-27.4 (2005). In 1995, the legislature adopted a new statute extending protection to children between the ages of 13 and 15 from sexual acts or intercourse by older persons. N.C. Gen. Stat. § 14-27.7A (2005).

Separate convictions for these offenses, even though consolidated for a single judgment, "have potentially severe adverse collateral consequences." *State v. Speckman*, 326 N.C. 576, 580, 391 S.E.2d 165, 168 (1990) (citation omitted). "Therefore, consolidating the two convictions and entering a single judgment did not reduce the trial court's error to harmless error." *Id.* We remand for judgment to be arrested on one count of rape and one count of sexual offense.

[10] Defendant next argues that there was insufficient evidence defendant took any actions against Debi for the purposes of arousing or gratifying his sexual desire. "[T]hat the action was for the purpose of arousing or gratifying sexual desire, may be inferred from the evidence of the defendant's actions. This is sufficient evidence to withstand a motion to dismiss the charge of taking indecent liberties with a child." *State v. Rhodes*, 321 N.C. 102, 105, 361 S.E.2d 578, 580 (1987).

In the present case, the victim had bite marks all over her body and extensive trauma to both her vagina and rectum. A reasonable inference, based upon the physical evidence alone, is that defendant had a sexual purpose in assaulting Debi. Moreover, defendant told police that he did not remember biting Debi, but acknowledged that it was possible because he had bitten another woman before while "making love" with her. There was sufficient evidence that defendant assaulted Debi for the purpose of arousing or gratifying sexual desire.

[11] Defendant cites no authority to support his argument that the felonious child abuse charges should have been dismissed at the close of the State's evidence. If there is no citation of authority in support of an argument, the assignment of error upon which the argument is based is therefore deemed abandoned. *See State v. Lloyd*, 354

N.C. 76, 87, 552 S.E.2d 596, 607 (2001) (Even if a defendant raises a constitutional issue at trial and makes that issue the subject of an assignment of error on appeal, he must cite authority in support of an alleged constitutional violation.); N.C. R. App. P. 28(b)(6).

## VI

**[12]** Defendant argues the trial court erred by arresting judgment on one of the felony convictions used to support his felony murder conviction. Defendant asserts that it was plain error for the trial court to arrest judgment on one but not all of the felonies that the jury found could support defendant's felony murder conviction. Defendant did not object on this basis or raise this issue at trial.

Our Supreme Court stated the felony murder merger rule requires the trial court to arrest judgment on at least one (but not all) of the underlying felony convictions if multiple convictions supported the conviction for felony murder. *State v. Barlowe*, 337 N.C. 371, 381, 446 S.E.2d 352, 358-59 (1994). In *Barlowe*, the Supreme Court indicated only one felony is necessary to support a felony murder conviction, and further that under the facts of that case, the record was clear that the jury found that two separate felonies supported the first degree murder conviction. *Id.* Although in *Barlowe* there was error in the submission to the jury of a first degree burglary charge, which also was one of the felonies supporting the first degree murder conviction, the Supreme Court stated that "[h]ad there been no error in submission of the first degree burglary charge, the trial court would have been required to arrest judgment on one of the underlying felony convictions but could have elected either the discharging a firearm into occupied property or the first-degree burglary conviction." *Id.* The Supreme Court further stated:

> To the extent *dicta* in the second opinion in *State v. Pakulski*, 326 N.C. 434, 437, 390 S.E.2d 129, 130 (1990), suggests the conviction for more than one underlying felony, if found, merges with the murder conviction thereby mandating that judgment on the multiple underlying felonies be arrested, that *dicta* is expressly disavowed.

*Id.* This Court has since followed *Barlowe* in addressing a situation in which the trial court sentenced defendant for first degree felony murder as well as for the two potential underlying felonies supporting the felony murder conviction. *See State v. Dudley*, 151 N.C. App. 711, 566 S.E.2d 843, *appeal dismissed and disc. rev. denied*, 356 N.C. 684, 578 S.E.2d 314 (2003). In *Dudley*, this Court noted that the merger rule

requires the trial court to arrest judgment on "at least one of the underlying felony murder convictions if two separate convictions supported the conviction for felony murder." *Id.* at 716, 566 S.E.2d at 847 (remanded the case with instructions to arrest one of the two felonies supporting the felony murder conviction). Where the trial court's jury instructions did not specify which of the multiple felonies were to be considered as the underlying felony for purposes of the felony murder conviction, it was within the trial court's discretion to select which felony conviction would serve as the underlying felony. *State v. Coleman,* 161 N.C. App. 224, 236, 587 S.E.2d 889, 897 (2003) (no error where trial court elected to arrest judgment on the attempted armed robbery conviction as the underlying felony for the felony murder conviction and to sentence defendant for three armed robbery convictions).

In the present case, the record was clear that the jury found that five felonies could support the felony murder charge: forcible rape, statutory rape, forcible sex offense, statutory sex offense, and felony child abuse with a deadly weapon. The trial court elected to arrest judgment on the felonious child abuse with a deadly weapon conviction. Following *Barlowe, Dudley,* and *Coleman,* we find no error.

In conclusion, for the reasons stated herein, we find no error at trial; the first degree rape and the first degree sex offense convictions are vacated and remanded.

No error in part; Vacated and remanded in part.

Judges WYNN and HUNTER concur.