Rehearing en banc granted, January 6, 2011

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 09-4298

TORRELL CHUVALA VANN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(7:08-cr-00098-BO-1)

Argued: January 27, 2010

Decided: September 24, 2010

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the majority opinion, in which Judge Shedd joined. Judge King wrote a dissenting opinion.

## COUNSEL

**ARGUED**: Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Clay C. Wheeler, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appel-

lee. **ON BRIEF**: Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Raleigh, North Carolina, for Appellee.

---

## OPINION

NIEMEYER, Circuit Judge:

This appeal presents the question whether Torrell Vann's sentence for possessing a firearm, in violation of 18 U.S.C. § 922(g), was properly enhanced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on three previous convictions in North Carolina for taking indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1. To constitute a predicate offense under ACCA, a conviction must be either for a "serious drug offense" or for a "violent felony," as defined in § 924(e)(2)(B) and interpreted by *Begay v. United States*, 553 U.S. 137 (2008). The district court relied on the North Carolina convictions to enhance Vann's sentence, and Vann challenges this ruling on appeal.

Because North Carolina's indecent liberties statute encompasses at least two separate crimes, we employ the modified categorical approach articulated in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), and conclude (1) that Vann's three prior convictions were based on his taking indecent liberties with a child by *willfully committing a lewd or lascivious act upon the body of a child* under the age of 16 and (2) that, as so formulated, his convictions were for violent felonies that serve as predicate offenses under ACCA. Accordingly, we affirm.

I

In the early morning hours of January 20, 2008, officers in Lumberton, North Carolina, responded to a 911 call from an

ex-girlfriend of Torrell Vann, complaining that Vann was insisting that he be let inside her house. By the time officers arrived, however, Vann had left. About an hour later, Vann returned and entered the ex-girlfriend's house through an unlocked back door. When the ex-girlfriend asked him to leave, Vann pulled out a pistol, put it to his head, and threatened to kill himself if she would not talk to him. Although Vann put the weapon away when the ex-girlfriend became upset and eventually left the residence, the ex-girlfriend again called the police. A short time later, officers stopped Vann's vehicle, finding that his speech was slurred, his license had been suspended, and he was in possession of a Bersa .380 pistol and ammunition.

Vann was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the indictment included the allegation that Vann had three previous convictions for "violent felonies," as defined in 18 U.S.C. § 924(e)(2)(B). Vann pleaded guilty to the charge pursuant to a written plea agreement.

In the presentence report, the probation officer found that Vann qualified as an armed career criminal under ACCA based on his three previous North Carolina convictions for taking indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1. Taking into account the ACCA enhancement, the probation officer calculated Vann's sentencing range under the Sentencing Guidelines as 180 to 210 months' imprisonment, with a mandatory minimum sentence of 180 months' imprisonment.

Vann objected to being classified as an armed career criminal, arguing that under *Begay* and *United States v. Thornton*, 554 F.3d 443 (4th Cir. 2009) (holding that Virginia's carnal knowledge offense is not a violent felony under ACCA), his indecent liberties convictions were not for violent felonies for purposes of ACCA. The government argued that the issue was essentially controlled by *United States v. Pierce*, 278 F.3d 282

(4th Cir. 2002) (holding that the offense of taking indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1, was a "crime of violence" for purposes of the career-offender enhancement under U.S.S.G. §§ 4B1.1, 4B1.2(a)).

The district court overruled Vann's objection, applied an enhancement under ACCA, and sentenced Vann to 180 months' imprisonment. This appeal followed.

## II

A violation of 18 U.S.C. § 922(g) ordinarily carries a maximum sentence of 10 years' imprisonment. 18 U.S.C. § 924(a)(2). But ACCA provides a sentencing enhancement based on the defendant's criminal history, providing that a person who has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" must be sentenced to at least 15 years' imprisonment. *Id.* § 924(e)(1). The Act defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

*Id.* § 924(e)(2)(B).

The government contends that Vann's three prior convictions for taking indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1, are convictions for violent felonies within the meaning of ACCA, relying on our decision in *Pierce*, which held that a violation of the North Carolina inde-

cent liberties statute categorically constitutes a "crime of violence," as that term is defined in the context of the Sentencing Guidelines' career-offender enhancement. *See Pierce*, 278 F.3d at 284. In *Pierce*, we found that the offense prohibited by the North Carolina statute involved conduct that, "'by its nature, present[s] a serious potential risk of physical injury to another,'" *id.* at 286 (quoting U.S.S.G. § 4B1.2, cmt. n.1), and also that the offense qualified as a "forcible sex offense"— which the Sentencing Guidelines' application notes explicitly list as a "crime of violence," *see* U.S.S.G. § 4B1.2, cmt. n.1— because "[t]he North Carolina courts have consistently held that constructive force may be inferred in sexual abuse cases involving children," 278 F.3d at 289. The government argues that *Pierce*'s holding, even though made in the context of the Sentencing Guidelines, nonetheless requires us to find that the North Carolina crime "has as an element the use, attempted use, or threatened use of physical force against the person of another," making it a violent felony under ACCA. 18 U.S.C. § 924(e)(2)(B)(i). The government also maintains that the offense qualifies as a violent felony because, as *Pierce* recognized, it "involves conduct that presents a serious potential risk of physical injury to another," which is an alternative definition of a violent felony under ACCA. *Id.* § 924(e)(2)(B)(ii).

In contrast, Vann asserts that *Pierce* has been effectively overruled by the Supreme Court's holding in *Begay* that § 924(e)(2)(B)(ii) does not cover "*every* crime that presents a serious potential risk of physical injury to another," but only those "that are roughly similar, in kind as well as in degree of risk posed, to the examples" included in the definition of "violent felony"—namely, burglary, arson, extortion, and crimes involving the use of explosives. *Begay*, 553 U.S. at 142-43 (internal quotation marks omitted). Vann contends further that holdings by North Carolina courts that a defendant need not touch the victim or, indeed, even be in the actual presence of the victim to violate the statute demonstrate that the taking indecent liberties offense does not have "as an element the use, attempted use, or threatened use of physical force against

the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Vann also argues that we should be guided by *Thornton*, a post-*Begay* decision, in which we held that Virginia's carnal knowledge offense—which makes it a crime to "carnally know[ ], without the use of force," a child who is between 13 and 15 years old—is not a "violent felony" under ACCA. *See Thornton*, 554 F.3d at 444 (quoting Va. Code Ann. § 18.2-63).

The issue thus framed is whether a violation of North Carolina's indecent liberties statute is a "violent felony," as defined in § 924(e)(2)(B) and interpreted by *Begay*.

To make that determination, ACCA requires application of a categorical approach by which *the elements* of the statute of conviction, *not the facts* supporting conviction, are evaluated to determine whether the crime qualifies as a predicate offense under ACCA. *See Taylor v. United States*, 495 U.S. 575, 599-602 (1990); *Chambers v. United States*, 129 S. Ct. 687, 690 (2009) ("[ACCA's] defining language, read naturally, uses 'felony' to refer to a crime as generally committed. And by so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing . . . whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior"). The Supreme Court first announced this principle in *Taylor*, holding that "the only plausible interpretation of [ACCA] is that . . . it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. at 602. The Court qualified this general principle, however, by adding that the categorical approach may be modified to "permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [a qualifying offense]" in order to convict the defendant. *Id.*

The full scope of this "modified categorical approach" was refined in *Shepard v. United States*, 544 U.S. 13 (2005), where the Court applied *Taylor* to convictions based on guilty

pleas. The Court held that the *Taylor*-approved modification to a strict categorical approach for identifying convictions for predicate offenses was not limited to convictions obtained through a jury trial. *Id.* at 19. Rather, for cases tried without a jury, a sentencing court may also consider the "bench-trial judge's formal rulings of law and findings of fact" and, for pleaded cases, the court may examine "the statement of factual basis for the charge, Fed. Rule Crim. Proc. 11(a)(3), shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." *Id.* at 20.

In two recent cases, the Supreme Court has further clarified the ACCA analysis by addressing how to determine whether the statute under which the defendant was convicted is subject to the modified categorical approach. *See Chambers*, 129 S. Ct. at 690-91; *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010). Emphasizing that the "categorical approach requires courts to choose the right category," *Chambers* recognized that the statute of conviction may proscribe different kinds of behavior, which, if sufficiently distinct, may constitute different crimes for ACCA purposes. 129 S. Ct. at 690. In *Chambers*, for example, the defendant had been convicted of a statute that prohibited

> (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and day release, and (7) failing to abide by the terms of home confinement.

*Id.* at 691 (citing Ill. Comp. Stat., ch. 720, § 5/31-6(a)). The Court held that statutory phrases (1) and (2), which prohibited escape from custody, constituted a category of behavior distinct from the behavior prohibited in statutory phrases (3)-(6),

all of which prohibited the similar form of behavior of failing to report or to return to custody. *Id.* It therefore treated statutory phrases (1) and (2) as a single category and phrases (3)-(6) as a single category, concluding that the statute of conviction should be treated "for ACCA purposes as containing at least two separate crimes, namely escape from custody on the one hand, and a failure to report on the other." *Id.* It also observed that "[t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." *Id.* Because the state-court information showed that Chambers had pleaded guilty to the generic crime of failing to report, the Court concluded that his conviction was not for an offense that satisfied ACCA's definition of "violent felony." *Id.* at 691-93.

Similarly, in *Johnson*, the Supreme Court evaluated a conviction under Florida's simple battery statute, which allowed conviction if the prosecution proved "that the defendant '[i]ntentionally cause[ed] bodily harm,' that he 'intentionally str[uck]' the victim, or that he merely '[a]ctually and intentionally touche[d]' the victim." 130 S. Ct. at 1269 (quoting Fla. Stat. § 784.03(1)(a)). Because no *Shepard*-approved material showed which type of battery resulted in Johnson's conviction, the Court held the conviction could not count as an ACCA predicate because "the least of these acts"— "[a]ctually and intentionally touch[ing]" another—was not a violent felony under ACCA. *Id.* at 1269. The Court made clear, however, that if *Shepard*-approved material had shown the defendant's battery conviction was based on the separate crime of "intentionally caus[ing] bodily harm," then the conviction would have qualified the defendant for a sentencing enhancement under ACCA. The Court explained:

> When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes . . . the "modified categorical approach" that we have approved permits a

> court to determine which statutory phrase was the basis for the conviction by consulting the trial record —including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.

*Id.* at 1273 (internal citation omitted); *see also United States v. Rivers*, 595 F.3d 558, 564 (4th Cir. 2010) (holding that it is appropriate to apply the modified categorical approach when "different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes"). Thus, we must begin by examining the statute of conviction to determine whether it covers more than one generic crime to ensure that we are using "the right category." *Chambers*, 129 S. Ct. at 690.

The North Carolina statute criminalizing the taking of indecent liberties with children does in fact contain phrases that cover two different generic crimes. One requires physical acts against the body of a child, and the other does not. The statute provides that a defendant who is "16 years of age or more and at least five years older than the child in question" is guilty of taking indecent liberties with the child if he *either*:

> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; *or*

> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C. Gen. Stat. § 14-202.1(a) (emphasis added). As interpreted by North Carolina courts, clause (1) of the statute is broader than clause (2), prohibiting a wide range of criminally

inappropriate behavior, such as "photographing an unclothed child in a sexually suggestive position, masturbating in front of a child, . . . secretly videotaping a child who was undressing," or engaging a child in sexually explicit telephone conversations. *State v. Every*, 578 S.E.2d 642, 648 (N.C. Ct. App. 2003) (citations omitted). Although clauses (1) and (2) overlap, clause (2) identifies and proscribes a narrower crime—committing lewd or lascivious acts upon or with the body of a child—that is conceptually separate and distinct from the crimes covered by clause (1) and requires a physical act *upon or with the body* of the victim. The statute thus covers at least two categories of crimes for ACCA purposes—(1) offenses based on the willful commission or attempted commission of a lewd or lascivious act upon or with the body of a child (*i.e.*, violations of § 14-202.1(a)(2)) and (2) all other indecent liberties offenses (*i.e.*, conduct that violates § 14-202.1(a)(1) but not (a)(2)). Accordingly, we may employ the modified categorical approach in this case to determine (1) whether the record reveals which generic crime was the basis for Vann's convictions and (2) if so, whether that generic crime is a "violent felony," as defined by ACCA. *See Johnson*, 130 S. Ct. at 1273; *Chambers*, 129 S. Ct. at 691; *Rivers*, 595 F.3d at 564-65; *see also United States v. Woods*, 576 F.3d 400, 405 (7th Cir. 2009) (noting that the modified categorical approach "may be used only to determine *which* crime within a statute the defendant committed, not *how* he committed that crime") (emphasis in original).[1]

---

[1]In concluding that the modified categorical approach is not appropriate, the dissent determines that violating North Carolina's indecent liberties statute constitutes a single offense, even though it also concedes that the statute provides "disjunctively two alternative means of proving one element of the offense." *Post* at 24 (quoting *Jones*, 616 S.E.2d at 20). This describes precisely the circumstance that allows for application of the modified categorical approach. In *Johnson*, the Supreme Court considered a statute that punishes the offense of "simple battery," the elements of which required either "actually and intentionally touch[ing] another person" or "intentionally caus[ing] bodily harm to another person," stated in the disjunctive. The Court noted that the single offense of simple battery

In applying the modified categorical approach, we are, of course, limited to considering "conclusive records made or used in adjudicating [a defendant's] guilt," which, when the defendant pleads guilty, include "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 21, 26.

Here, the only material in the record before the district court was the presentence report, which provided the following description of the offense underlying Vann's first indecent liberties conviction:

> *According to the indictment*, on December 17, 1991, Vann willfully did take and attempt to take immoral, improper, and indecent liberties with a child . . . for the purpose of arousing and gratifying sexual desire *and* did commit a lewd and lascivious act upon the body of said child.

J.A. 51 (emphasis added).[2] The presentence report indicated

---

could be violated by satisfaction of either one of the two disjunctive elements. *See Johnson*, 130 S. Ct. at 1269-70. Recognizing that a violation of one of the disjunctive elements would not be considered a violent felony, the Court held that it was appropriate to employ the modified categorical approach "to determine which statutory phrase was the basis for the conviction." *Id.* at 1273.

As in *Johnson*, the North Carolina statute for indecent liberties has two alternative elements, one of which, as we hold below, constitutes a violent felony. Accordingly, we are permitted to apply the modified categorical approach to determine which was the basis for the convictions. In this case, that determination is made on the basis of Vann's guilty pleas during which he pleaded guilty to *both* elements of the offense as charged, including the one that constitutes a violent felony.

[2]The dissent reasons that because the charging document charges Vann with a violation of both disjunctive elements of the North Carolina inde-

that Vann pleaded guilty to this charge. Although the paragraphs of the presentence report describing Vann's two other indecent liberties convictions arising from conduct in July 1998 and August 1998, which were also obtained through guilty pleas, simply state that they were based on "court records," the descriptions of these offenses were materially identical to the first, again tracking the statutory language, and were therefore also undoubtedly based on the charging documents. While Vann's counsel refused to concede at oral argument that we could properly rely on the presentence report's descriptions of the charging documents, we have previously recognized that a presentence report, to which the defendant did not object, may be consulted to the extent that its information is derived from *Shepard*-approved sources. *See United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005) ("The trial judge was entitled to rely upon the PSR because it bears the earmarks of derivation from *Shepard*-approved sources such as the indictments and state-court judgments from his prior convictions, and, moreover, Thompson never raised the slightest objection either to the propriety of its source material or to its accuracy"). Moreover, at our request, Vann's counsel has now provided us with copies of the charging documents and judgments for the three convictions,[3] materials that confirm that Vann pleaded guilty three

cent liberties statute, it does not *necessarily* charge a violation of the element constituting a violent felony. *Post* at 28-30. But that argument misses the point in the context of this case because Vann pleaded guilty to a violation of both elements thus admitting that he "did commit and attempt to commit a lewd and lascivious act upon the body of" a named child under the age of 16. When a defendant makes admissions supporting the conviction for a violent felony, the admissions may be relied on in lieu of the facts inherent in the statutory offense. *See Shepard*, 544 U.S. at 19 (noting that "guilty pleas may establish ACCA predicate offenses"); *id.* at 25 (plurality opinion); *United States v. Alston*, __ F.3d __, 2010 WL 2635796, at *6 (4th Cir. July 2, 2010).

[3]Although Vann's counsel requested an opportunity to submit supplemental briefs on the question of whether we can consider state charging documents not made part of the record in the district court, we conclude

times to charges of committing, at separate times, a lewd and lascivious act upon the body of a child. The December 1991 charging document included a statement that Vann

> did commit and attempt to commit a lewd and lascivious act upon the body of the child named below. At the time of this offense, the child named below was under the age of 16 years and the defendant named above was over 16 years of age and at least five years older than the child. The name of the child is [SLH].

The July 1998 charging document included a somewhat more detailed statement that Vann

> did commit and attempt to commit a lewd and lascivious act upon [ENL], a child 13 years of age, the defendant being more than six years older than the child and was not lawfully married to the victim
> . . . .

The August 1998 charging document included a statement similar to that included in the July 1998 charging document and named the same victim.

The dissent notes that these statements in the charging documents were included in each case with another statement that Vann took "immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desire," the alternative element that would also support a violation of the North Carolina statute. *Post* at 29-30. It

that the issue has been resolved in our circuit. *See Lolavar v. De Santibanes*, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking "judicial notice of the records of a court of record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that courts of appeals may properly take judicial notice of state court proceedings that were not part of the record before the district court).

argues that a charging document charging two alternative elements conjunctively must be taken, absent a special verdict, as a conviction on "the lesser of the disjunctive statutory objects." *Post* at 29. It reasons therefore that Vann could not be imputed with a conviction on the more serious, violent element charged in the charging document. *See post* at 28-30.

This argument, however, fails to appreciate the distinction between a jury verdict on a charging document alleging in the conjunctive two alternative elements and a guilty plea. In returning a verdict, the jury can rely on either element to support its finding of guilt, and therefore the verdict cannot necessarily be found to rely on the more serious, violent element. But the modified categorical approach also permits the nature of the prior convictions to be determined by "the defendant's own admissions" in pleading guilty, and in that case, the admissions determine the nature of the conviction. *See Shepard*, 544 U.S. at 25 (plurality opinion). In this case Vann admitted that he committed lewd and lascivious acts upon the bodies of two named children under the age of 16.

Relying on the violations of N.C. Gen. Stat. § 14-202.1 (a)(*2*) (prohibiting a lewd and lascivious act upon or with the body of a child), as indicated by employing the modified categorical approach, we now turn to the question whether willfully committing a lewd or lascivious act upon the body of a child is a "violent felony" within the meaning of 18 U.S.C. § 924(e)(2)(B).

It might be argued, although with some difficulty in light of the Supreme Court's recent decision in *Johnson*, that willfully committing a lewd or lascivious act upon the body of a child is a violent felony under the first prong of § 924(e)(2)(B)'s definition of "violent felony," which requires the offense to "ha[ve] as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(e)(2)(B)(i). *Johnson* held that the phrase "physical force" in this clause "means *violent* force—that is, force capa-

ble of causing physical pain or injury to another person." *Johnson*, 130 S. Ct. at 1271. The nature of a sex act committed "upon the body of a child," while not necessarily producing immediate physical pain or injury, arguably causes serious long-term injury to the psyche, which may ultimately manifest itself physically. Indeed, one can conceive of only a few criminal acts that result in such serious and long-lasting injury. Thus, a child, whom the law presumes unable to consent to such an act, is subjected to the "force" of the predator, and the resulting long-term injury may satisfy *Johnson*'s violence requirement. *Cf. United States v. Chacon*, 533 F.3d 250, 257-58 (4th Cir. 2008) (holding that a sex offense perpetrated in the absence of consent, but which does not have as an element the use, attempted use, or threatened use of physical force, nonetheless constitutes a "crime of violence" under the Sentencing Guidelines by qualifying as a "forcible sex offense"); *Pierce*, 278 F.3d at 289-90 (same).

But the more readily applicable prong of § 924(e)(2)(B)'s definition of "violent felony" is the second prong, which qualifies a previous conviction when the offense of conviction "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). To fulfill this requirement, the crime must be "roughly similar, in kind as well as in degree of risk posed," to the provision's example crimes—burglary, arson, extortion, and crimes involving the use of explosives—all of which "typically involve purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 143-45 (internal quotation marks omitted).

After *Begay*, the Second Circuit in *United States v. Daye*, 571 F.3d 225 (2d Cir. 2009), addressed whether a defendant's three prior convictions under a Vermont statute prohibiting sexual assault of a child qualified him for a sentencing enhancement under ACCA. The Vermont statute made it a crime for any person to engage in a sexual act with a person under the age of 16, with an exception for consensual acts between married persons. Applying *Begay*, the Second Circuit

held that a violation of the Vermont statute was categorically a violent felony under § 924(e)(2)(B)(ii). It found "that a sexual act inflicted upon a child by an adult ordinarily creates a serious potential risk of physical harm to the child," reasoning that "the nature of the conduct and the child's relative physical weakness give rise to a substantial likelihood that the adult may employ force to coerce the child's accession." *Id.* at 232. The court also found that the Vermont offense was sufficiently similar in kind to § 924(e)(2)(B)(ii)'s example crimes to satisfy *Begay*. The court acknowledged that the offense imposed strict liability with regard to the age of the victim but nonetheless concluded that it typically involved purposeful conduct because the crime, by its terms, "involves deliberate and affirmative conduct—namely, an intentional sexual act with a person who is, in fact, under the age of consent." *Id.* at 234. Finally, the court concluded that a typical violation of the Vermont statute was sufficiently violent and aggressive to satisfy *Begay*:

> [C]rimes involving sexual contact between adults and children create a substantial likelihood of forceful, violent, and aggressive behavior on the part of the perpetrator because a child has essentially no ability to deter an adult from using such force to coerce the child into a sexual act. Such likely use of force not only creates a risk of injury to the victim, but also establishes that the perpetrator will commonly act in a purposeful, violent, and aggressive manner. At a minimum, we have no doubt that a typical instance of this crime will involve conduct that is at least as intentionally aggressive and violent as a typical instance of burglary.

*Id. But see United States v. McDonald*, 592 F.3d 808, 814 (7th Cir. 2010) (holding that the felony of having sexual contact or intercourse with a person under the age of 16 is not a crime of violence for purposes of the Sentencing Guidelines after reasoning that the offense is a strict-liability crime because

"no *mens rea* is required with respect to the age of the victim"); *United States v. Christensen*, 559 F.3d 1092, 1095 (9th Cir. 2009) (holding that a conviction for statutory rape—involving sexual intercourse with a child between the ages of 14 and 16 when the perpetrator is at least 48 months older—is not categorically a violent felony under ACCA because "it does not necessarily involve either 'violent' or 'aggressive' conduct").

Inasmuch as *Daye* focuses on crimes that "*typically* involve purposeful, violent, and aggressive conduct," *see* 571 F.3d at 234 (alteration omitted) (quoting *Begay*, 553 U.S. at 144-45) —an analysis not employed by the courts in *McDonald* and *Christensen*—we find *Daye* more persuasive. Its analysis faithfully applies the Supreme Court's decisions in *Begay* and *James v. United States*, 550 U.S. 192 (2007).

In *James*, the Supreme Court held that a violation of Florida's attempted burglary statute was a violent felony under § 924(e)(2)(B)(ii). In reaching its holding, the Court stressed that the categorical approach does not "requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* at 208. Indeed, the Court observed, the crimes specifically listed in § 924(e)(2)(B)(ii), which "provide a baseline against which to measure the degree of risk that a nonenumerated offense must 'otherwise' present," could not even meet that standard. *Id.* It noted that one could imagine a burglary in the form of "a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors" or "an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments," neither of which would pose "a realistic risk of confrontation or injury to anyone." *Id.* at 207-08. The Court thus concluded that "the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk

of injury to another." *Id.* at 208 (emphasis added). This is also what *Begay* concluded.

In *Begay*, the Court, while holding that a violation of New Mexico's statute prohibiting driving under the influence of alcohol did not constitute a violent felony, explained that a qualifying offense must be "roughly similar[ ] in kind" to the example crimes listed in § 924(e)(2)(B)(ii), all of which "*typically* involve purposeful, violent, and aggressive conduct." 553 U.S. at 143-45 (emphasis added) (internal quotation marks omitted). That the example crimes are *typically* marked by such conduct is significant, the Court stressed, because that kind of behavior "makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 145.

Critically, just as *James* does not require "that every conceivable factual offense covered by a statute . . . necessarily present a serious potential risk of injury before the offense can be deemed a violent felony," 550 U.S. at 208, *Begay* does not require that all conduct that represents a violation of the statute be purposeful, violent, and aggressive for the crime to qualify as a violent felony. Indeed, it is self-evident that the example crimes themselves may be committed in ways that are not purposeful, violent, and aggressive. What matters is that the offense, in a manner "roughly similar" to arson, burglary, extortion, and the unlawful use of explosives, "*typically* involves purposeful, violent, and aggressive conduct," so that a conviction for that offense tends to "show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger." *Begay*, 553 U.S. at 143-46 (emphasis added) (internal quotation marks omitted).

Applying these principles to the relevant provision here, we are satisfied that the North Carolina offense of taking indecent liberties with a child by *willfully committing a lewd or lascivious act upon or with the body of the child*, in violation of N.C. Gen. Stat. § 14-202.1(a)(2), is "a violent felony" under

§ 924(e)(2)(B)(ii). First, as we recognized in *Pierce*, conduct that violates this provision will, in the ordinary case, present a potential risk of physical injury to the child that is at least as serious as the risk facing a victim of arson or burglary. *See Pierce*, 278 F.3d at 290 ("[C]hild abuse by an adult . . . present[s] a serious *potential* risk of physical injury to the child, a danger that is quite similar in character to the *potential* injury to persons involved in arson or burglary, both of which are specifically recognized as crimes of violence"). Moreover, the offense is "roughly similar, in kind," to arson, burglary, extortion, and the unlawful use of explosives in a way that the crime of driving under the influence at issue in *Begay* was not, and we readily conclude that the typical instance of a defendant willfully committing a lewd or lascivious act upon or with the body of a child who is under the age of 16 and at least 5 years younger than the defendant involves purposeful, violent, and aggressive conduct. Indeed, review of North Carolina decisions applying the statute reveals that a large number of violations involve the use of horrific force. *See*, *e.g.*, *State v. Rhodes*, 361 S.E.2d 578, 579 (N.C. 1987) (defendant had sexual intercourse with a 10-year-old girl and threatened to kill her, her mother, and her brother if she told anyone what he had done); *State v. Ridgeway*, 648 S.E.2d 886, 889-90 (N.C. Ct. App. 2007) (defendant bit, raped, sodomized, and murdered a 14-year-old girl); *State v. Jones*, 393 S.E.2d 585 (N.C. Ct. App. 1990) (defendant repeatedly had sexual intercourse with his step-daughter, threatened to kill her, and choked her). This is no surprise since, given the age differential and the resulting power disparity between the defendant and the child, the offense will naturally tend to involve coercive conduct that can readily escalate to physical violence. Accordingly, we conclude that willfully committing a lewd or lascivious act upon the body of a child, in violation of N.C. Gen. Stat. § 14-202.1(a)(2), satisfies *Begay*'s standard and qualifies as a "violent felony" under § 924(e)(2)(B)(ii).

Vann relies heavily on our holding in *Thornton* to argue otherwise. In that decision, we held that Virginia's carnal

knowledge offense, which makes it a crime to "carnally know[ ], *without the use of force*, a child thirteen years of age or older but under fifteen years of age," Va. Code Ann. § 18.2-63 (emphasis added), does not qualify as a violent felony under ACCA, as interpreted by *Begay*. *Thornton*, 554 F.3d at 444. Although Virginia's carnal knowledge offense overlaps to some extent with North Carolina's indecent liberties offense, important and material differences exist that distinguish *Thornton*. Most notably, the Virginia offense is, by its own terms, committed "*without the use of force*," while the North Carolina crime is not so limited. Indeed, as we have noted, the North Carolina crime tends to involve coercive conduct that can readily escalate to physical violence. Additionally, the Virginia statute only covers sexual contact with young teens who are 13 and 14 years old, while the North Carolina statute protects all children, including society's youngest. The North Carolina statute also requires that the defendant be at least 16 years old and at least 5 years older than the child, while the Virginia statute only takes the defendant's age into account to lessen the punishment if he is a minor and the child in fact consented. *See* Va. Code Ann. § 18.2-63(B). The result of these differences is that a typical violation of the North Carolina statute is much more likely to be marked by violent and aggressive conduct than an ordinary violation of the Virginia statute considered in *Thornton*, and therefore it qualifies as a violent felony under ACCA, even though Virginia's carnal knowledge offense does not.

For the reasons given, we affirm the judgment of the district court.

*AFFIRMED*

KING, Circuit Judge, dissenting:

With great respect for my fine colleagues of the majority, I strongly disagree with their decision in this case. I write separately in dissent for several reasons. First, the majority errs

in deciding that North Carolina General Statute § 14-202.1 (the "Indecent Liberties Statute," or the "Statute") delineates two distinct crimes, thereby justifying its application of the "modified categorical approach" to the ACCA issue. Second, the majority errs in ruling that Vann "necessarily" violated the second prong — subsection (a)(2) — of the Indecent Liberties Statute. And third, the majority errs in classifying subsection (a)(2) as a "violent felony" under the ACCA, which it accomplishes by ignoring applicable precedent and misconstruing the Statute.

I.

In assessing whether a prior conviction qualifies as an ACCA predicate offense, the federal courts are normally obliged to employ the "categorical approach," looking only to the existence of a conviction and the statutory definition of the earlier offense. *See Taylor v. United States*, 495 U.S. 575, 602 (1990). The focus in a proper ACCA analysis is on whether the statutory elements justify classifying the earlier offense as an ACCA predicate crime, and not on the factual underpinnings of the particular conviction. *See James v. United States*, 550 U.S. 192, 202 (2007).[1] In some instances, the statute of conviction may include separate generic crimes — for example, failure to report as well as escape, or burglary of a residence as well as burglary of a vehicle. *See Chambers v. United States*, 129 S. Ct. 687, 690-91 (2009). In this "narrow range of cases," a court is entitled to "go beyond the mere fact of conviction" to determine which portion of the statute — that is, which crime — "necessarily" underlies the conviction. *Taylor*, 495 U.S. at 602; *see United States v. Rivers*, 595 F.3d 558, 562 (4th Cir. 2010); *United States v. Woods*, 576

---

[1]In utilizing the categorical approach, as the Supreme Court has explained, a court must look to the "generic crime, say, the crime of fraud or theft in general," rather than "the specific acts in which an offender engaged on a specific occasion." *Nijhawan v. Holder*, 129 S. Ct. 2294, 2298 (2009).

F.3d 400, 404 (7th Cir. 2009). This narrow exception to the categorical approach is known as the "modified categorical approach." *See United States v. Harcum*, 587 F.3d 219, 223 (4th Cir. 2009) (internal quotation marks omitted).

In concluding that a violation of the Indecent Liberties Statute constitutes a violent felony under the ACCA, the majority theorizes that the Statute "does in fact contain phrases that cover two different generic crimes" — "[o]ne requires physical acts against the body of a child, and the other does not." *Ante* at 9.[2] According to the majority, subsection (a)(1) is a broad provision "prohibiting a wide range of criminally inappropriate behavior," including sexually explicit telephone conversations, photographing unclothed children, and masturbating in a child's presence. *Id.* at 9-10. By contrast, the majority erroneously perceives subsection (a)(2) as "requir-[ing] a physical act upon or with the body of the victim," and thus detailing a crime that is "conceptually separate and distinct from the crimes covered by [subsection (a)(1)]." *Id.* at 10 (emphasis omitted). From this misperception of North Carolina law, the majority concludes that it "may employ the modified categorical approach" to determine, in the context of Vann's three contested convictions, whether he was convicted of violating subsection (a)(2) and, if so, whether subsection (a)(2) is a violent felony under the ACCA. *Id.*

---

[2]The Indecent Liberties Statute specifies that a person has taken indecent liberties with a child if that person is "16 years of age or more and at least five years older than the child in question," and either:

> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire ["subsection (a)(1)"]; or

> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years ["subsection (a)(2)"].

N.C. Gen. Stat. § 14-202.1(a).

The fundamental error in the majority's analysis is that it ignores North Carolina's interpretation of the Indecent Liberties Statute. North Carolina's conception of its own statute is paramount, for in conducting a proper ACCA analysis we must apply the Statute as it has been defined and interpreted by the North Carolina courts. *See Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010) (explaining that, in conducting ACCA analysis, "[w]e are . . . bound by the [state] Supreme Court's interpretation of state law, including its determination of the elements of [the pertinent statute]"); *James*, 550 U.S. at 202 (beginning ACCA analysis "by examining what constitutes attempted burglary under Florida law"); *United States v. Bethea*, 603 F.3d 254, 257 (4th Cir. 2010) (explaining that, in determining if modified categorical approach is appropriate, "we look to how [the] elements are defined by statute and by the state's supreme court"). To be sure, one of the basic tenets of our federal system is that a federal court is not empowered "to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). As Justice Stevens explained therein, for the unanimous Court, "[t]his proposition [is] fundamental to our system of federalism." *Id.*

It is vitally significant that, in enacting the Indecent Liberties Statute, North Carolina chose not to "distinguish between the types of indecent liberties," *State v. Jones*, 393 S.E.2d 585, 589 (N.C. Ct. App. 1990), and instead made "[t]he crime of indecent liberties . . . a single offense," *State v. Hartness*, 391 S.E.2d 177, 180 (N.C. 1990); *see also State v. Jones*, 616 S.E.2d 15, 20 (N.C. Ct. App. 2005) (rejecting proposition that "[s]ubsections (a)(1) and (a)(2) are separate criminal offenses with different elements" (emphasis omitted)). Indeed, although theoretically distinguishable, the Statute's two subsections have been treated interchangeably by the North Carolina courts. *See, e.g.*, *State v. Strickland*, 335 S.E.2d 74, 76 (N.C. Ct. App. 1985) (utilizing language of subsections (a)(1) and (a)(2) in explaining that "[t]he liberty that defendant willfully took with the boys . . . in exposing his lewd and lascivi-

ous activity to them and inviting their participation was certainly indecent, immoral and improper"). In order to prove an offense under the Statute, the State must establish five elements:

> (1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Coleman*, 684 S.E.2d 513, 519 (N.C. Ct. App. 2009) (internal quotation marks omitted). According to North Carolina's courts, the Statute provides "disjunctively two alternative means of proving *one element* of the offense of indecent liberties." *Jones*, 616 S.E.2d at 20.[3]

More specifically, the Indecent Liberties Statute's two subsections provide alternative conduits for establishing that the activity was "for the purpose of arousing or gratifying sexual desire," with such a purpose being "assumed" in the context of lewd and lascivious acts. *See State v. Wilson*, 361 S.E.2d 105, 108 (N.C. Ct. App. 1987) (internal quotation marks omit-

---

[3]The majority maintains that, because a violation of the Indecent Liberties Statute provides "disjunctively two alternative means of proving *one element* of the offense," *Jones* 616 S.E.2d at 20, application of the modified categorical approach is somehow appropriate. *See ante* at 10-11 n.1. To support its unwarranted conclusion, the majority relies on the Supreme Court's recent decision in *Johnson v. United States*, 130 S. Ct. 1265 (2010), but ignores the fact that *Johnson* reiterated the Court's precedent that the modified categorical approach is applicable only in those situations where a statute contains two or more different generic crimes. *See Johnson*, 130 S. Ct. at 1273. Because the Supreme Court of North Carolina has already concluded that the "crime of indecent liberties is a *single offense*," *see Hartness*, 391 S.E.2d at 180 (emphasis added) — rather than two separate generic crimes — the modified categorical approach simply is not applicable to violations of the Statute.

ted). As either theory can establish culpability, the North Carolina courts have recognized that the same behavior can be prosecuted under either subsection, *see, e.g.*, *State v. Banks*, 370 S.E.2d 398, 407 (N.C. 1988) (prosecuting "acts of kissing" under subsections (a)(1) and (a)(2)), and, in assessing the ambit of one of the Statute's subsections, those state courts have frequently relied on decisions that involve the companion subsection, *see, e.g.*, *State v. Every*, 578 S.E.2d 642, 647-48 (N.C. Ct. App. 2003) (relying, in appeal under subsection (a)(1), on prior decision involving subsection (a)(2)). Significantly, the very criminal acts that the majority now suggests are prohibited only by subsection (a)(1) — "photographing an unclothed child in a sexually suggestive position [and] masturbating in front of a child," *ante* at 10 (internal quotation marks omitted) — have actually been prosecuted and punished under subsection (a)(2). *See State v. Hammett*, 642 S.E.2d 454, 459 (N.C. Ct. App. 2007) (prosecuting masturbation in another's presence under subsection (a)(2)); *State v. Turman*, 278 S.E.2d 574, 575 (N.C. Ct. App. 1981) (same; subsection (a)(1)); *State v. McClees*, 424 S.E.2d 687 (N.C. Ct. App. 1993) (prosecuting videotaping of disrobing teenager under subsection (a)(1)); *State v. Kistle*, 297 S.E.2d 626 (N.C. Ct. App. 1982) (prosecuting photographing of unclothed child under subsection (a)(2)). Moreover, contrary to the majority's interpretation of subsection (a)(2) as requiring a "physical act[ ]," *ante* at 10 — presumably some act of touching — the North Carolina courts have ruled that neither subsection (a)(1) nor subsection (a)(2) requires a touching. *See Hammett*, 642 S.E.2d at 459 (rejecting contention "that, in order to be convicted under [subsection (a)(2)], the accused must physically touch the victim"); *Every*, 578 S.E.2d at 648 (recognizing that subjection (a)(1) does not require touching).

Put most simply, the Indecent Liberties Statute proscribes only one generic crime: the taking of indecent liberties with a child. *See Jones*, 616 S.E.2d at 20 (explaining that "'[t]he crime of indecent liberties is a single offense'" and rejecting

proposition that subsections have different elements).**[4]** Therefore, in analyzing the Statute, we should, as my friend Judge Niemeyer explained in an earlier decision, simply apply the "categorical approach, which takes into account only the definition of the offense and the fact of conviction." *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002) (analyzing Statute for career offender purposes). And under that approach — as the majority implicitly acknowledges — a violation of the Statute does not constitute a "violent felony" under the ACCA because it is not similar in kind or in degree of risk to the ACCA enumerated crimes of arson, burglary, extortion, and offenses involving explosives. *See ante* at 10 (recognizing breadth of Statute); *see also Every*, 578 S.E.2d at 647 (concluding that "the utterance of 'mere words'" constitutes indecent liberty).

## II.

The majority has compounded its initial error — determining that the Indecent Liberties Statute proscribes two distinct crimes — by finding that Vann, in each of his three underlying convictions, "necessarily" contravened subsection (a)(2) of the Statute. It is far from clear, however, that Vann pleaded guilty to violating subsection (a)(2), which the majority presents as the more egregious of what it deems to be the Statute's two alternative offenses.

## A.

The Supreme Court has specified the restricted parameters of the inquiry into whether a conviction qualifies as an ACCA

---

**[4]**In its opinion, the majority erroneously maintains that this dissenter has somehow "determine[d] that violating North Carolina's indecent liberties statute constitutes a single offense." *Ante* at 10-11 n.1. To the contrary, it is the Supreme Court of North Carolina, rather than this lone dissenter, that made such a determination, by explicitly recognizing twenty years ago that "[t]he crime of indecent liberties is a single offense." *State v. Hartness*, 391 S.E.2d 177, 180 (N.C. 1990).

violent felony. In 1990, in *Taylor v. United States*, the Supreme Court explained the limited circumstances where a court may "go beyond the mere fact of conviction" in assessing ACCA applicability, namely the "narrow range of cases where a jury was actually required to find all the elements of [a] generic [qualifying offense]." 495 U.S. 575, 602 (1990). As the Court explained (by way of example), "in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict," the earlier conviction would qualify as an ACCA predicate offense. *Id.*

Fifteen years later, in *Shepard v. United States*, the Court extended the *Taylor* rationale to convictions obtained by way of guilty pleas. *See* 544 U.S. 13 (2005). In so doing, the Court "adhere[d] to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to [a predicate offense]," *id.* at 24, recognizing that constitutional concerns "counsel[ed] [the Court] to limit the scope of judicial factfinding on the disputed generic character of a prior plea," *id.* at 25-26. Accordingly, the *Shepard* Court restricted the ACCA inquiry to whether an earlier guilty plea "necessarily admitted elements of the generic offense," as demonstrated by the terms of the plea agreement, the terms of the charging document, the transcript of the plea colloquy in which the defendant confirmed the factual basis for the plea, or "some comparable judicial record of this information." *Id.* at 26. The *Shepard* Court elaborated upon this rationale as follows: when the statute requires no finding of a generic qualifying crime, "the only certainty of a generic finding" when the charging document does not narrow the charge to generic limits, is in the jury instructions, bench-trial findings and rulings, or, in the context of a guilty plea, "the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." *Id.* at 25.

The *Shepard* decision thus establishes the parameters of the ACCA-related inquiry in a pleaded case. Importantly, though, it also demonstrates the degree of certainty that is required for a prior conviction to qualify under this "restricted look." 544 U.S. at 23. The charging documents at issue in *Shepard* recited the pertinent burglary statute, which encompassed burglaries of buildings as well as vehicles, and listed the residential address where the offense occurred. *See Shepard*, 544 U.S. at 31-32 (O'Connor, J., dissenting). The *Shepard* Court, however, observed that "the record is silent on the generic element [namely, whether it was burglary of a building], there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact." 544 U.S. at 25. Because of the failure to satisfy this generic requirement, Shepard's earlier burglary convictions were not ACCA predicate offenses.

B.

By contrast, the majority today determines that Vann "necessarily" pleaded guilty to violating subsection (a)(2) of the Statute — a determination predicated on the descriptions of his prior convictions in the presentence report (the "PSR"), which were either made "[a]ccording to the indictment" or derived from "court records," and by the use of the word "and" in delineating the charges in those descriptions and the charging documents. *See ante* at 11-12 (internal quotation marks and emphasis omitted). Such reliance is entirely undermined, however, by the legal principles generally applicable to charging documents (such as indictments).

First, it is established that a charging document must allege conjunctively the disjunctive components of an underlying statute. *See State v. Armstead*, 562 S.E.2d 450, 452 (N.C. Ct. App. 2002) ("Where a statute sets forth disjunctively several means or ways by which the offense may be committed, a warrant thereunder correctly charges them conjunctively." (internal quotation marks omitted)); *see also United States v. Rhynes*, 206 F.3d 349, 384 (4th Cir. 1999) ("Where a statute

is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive.").[5] As a result, that Vann's earlier charging documents apparently use the conjunctive term "and," rather than the disjunctive "or," does not mean that Vann "necessarily" pleaded guilty to subsection (a)(2). It is also established that when a defendant is convicted under a conjunctively charged indictment, in the absence of a special verdict identifying the factual bases for conviction, a sentence cannot be imposed that exceeds the statutory maximum for the "least-punished" component, that is, the lesser of the disjunctive statutory objects. *See Rhynes*, 206 F.3d at 379-81.[6]

Moreover, this case presents a much weaker basis than in *Shepard* for determining the nature of Vann's prior offenses. The charging documents merely recite the language of the

---

[5]Indeed, a disjunctive charge in an indictment contravenes an accused's constitutional rights. *See, e.g.*, *The Confiscation Cases*, 87 U.S. 92, 104 (1874) (explaining that disjunctive charge is "wholly insufficient" and lacks "necessary certainty," as it fails to provide "definite notice of the offence charged" and does not protect against "subsequent prosecution for one of the several offences").

[6]According to the majority, the dissent "fails to appreciate the distinction between a jury verdict on a charging document alleging in the conjunctive two alternative elements and a guilty plea." *Ante* at 14. The majority draws this distinction on the basis of its theory that, when a defendant pleads guilty, he necessarily admits all allegations charged conjunctively. Notably, the majority identifies no authority that supports such a theory, which it has apparently created from whole cloth. Indeed, there is support for the opposite conclusion. *See e.g.*, *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082 n.3 (9th Cir. 2007) ("[A] plea of guilty admits only the elements of the charge necessary for a conviction."); *Omari v. Gonzales*, 419 F.3d 303, 308 n.10 (5th Cir. 2005) ("Indictments often allege conjunctively elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty."). Furthermore, the majority's theory is incompatible with our *Rhynes* precedent and its underlying principles, as enunciated in *Edwards v. United States*, 523 U.S. 511 (1998), and *United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975). *See Rhynes*, 206 F.3d at 379-81.

Statute, provide the dates of the alleged offenses and identities of Vann and the minor, and aver that the age requirements were satisfied. Each charging document alleges a violation of the Statute, without specifying either subsection thereof. And, consistent with North Carolina law, each properly alleges the indecent liberties offense in conjunctive fashion. Similarly, each judgment simply specifies the file number, identifies the offense as "Indecent Liberties with Minor Child" or "Indecent Liberties with Child," denotes the pertinent statute only as "14-202.1," and recognizes that no written findings were made. From this weak reed, the majority somehow finds that Vann *necessarily* violated subsection (a)(2) of the Statute.

## C.

In view of the foregoing, the majority's "finding" that each of Vann's three contested convictions violated subsection (a)(2) of the Statute is erroneous in multiple respects. Most basically, it contravenes the settled principle that appellate courts do not make factual findings. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 418-19 (4th Cir. 2010) (King, J., dissenting); *see also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 575-76 (4th Cir. 1995) ("It is a basic tenet of our legal system that, although appellate courts often review facts found by a judge or jury . . . , they do not make such findings in the first instance."). Further, it is at best disingenuous to "conclude that the issue" "of whether we can consider state charging documents not made part of the record in the district court" "has been resolved in our circuit." *Ante* at 12-13 n.3. It is one thing for a federal court to look at a state court docket in assessing jurisdiction over a removed case, or to note a subsequent arson conviction in determining the propriety of rescinding a fire insurance settlement offer. *See id.* (citing *Lolavar v. de Santibanes*, 430 F.3d 221 (4th Cir. 2005); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989)). It is materially different to rest a sentencing decision — affirming the transformation of a ten-year maximum into a fifteen-year minimum — on the basis of evidence never

presented to the district court, particularly when such evidence was not requested until after oral argument.[7]

Moreover, it bears emphasis that the basis of the majority's conclusion that Vann's convictions "necessarily" rest on subsection (a)(2) is that the charging documents simply recite the language of the Indecent Liberties Statute. Recently, however, we ruled that a conviction under a so-called *Alford* plea — where the defendant does not confirm the factual basis for the plea, *see North Carolina v. Alford*, 400 U.S. 25 (1970) — does not qualify as an ACCA predicate offense when the statutory definition contains both qualifying and non-qualifying predicate crimes and no other *Shepard*-approved documents establish the offense on which the defendant was convicted. *United States v. Alston*, 611 F.3d 219, 227-28 (4th Cir. 2010). As Judge Niemeyer properly recognized in *Alston*, "*Shepard* prevents sentencing courts from assessing whether a prior conviction counts as an ACCA predicate conviction by relying on facts neither inherent in the conviction nor admitted by the defendant." *Id.* at 226. Indeed, our opinion emphasized that the *Alford* plea "did not necessarily rest on facts establishing [Alston's] second-degree assault offense as a type of assault that qualifies as a violent felony" and that, in accepting his plea, the trial court was not required to find such facts; therefore, "we [could not] say that the facts indicating the violent nature of the second-degree assault charge to which Alston tendered his plea are inherent in the fact of his conviction." *Id.* at 227 (alteration and internal quotation marks omitted). Accordingly, we concluded that

---

[7]Indeed, the district court had no opportunity to consider the state charging documents, nor did the parties have the opportunity to object to their validity or argue their implications. Thus, to the extent the propriety of treating Vann's convictions as qualifying ACCA violent felonies depends on the charging documents, the district court should consider those materials in the first instance. *See, e.g.*, *United States v. Alston*, 611 F.3d 219, 225 (4th Cir. 2010) (recognizing that "sentencing court" conducts ACCA analysis).

the State's proffer of the factual basis for Alston's
*Alford* plea, although necessary for the state court's
acceptance of the plea, cannot now establish, with
the requisite certainty, that the conviction for
second-degree assault that followed Alston's plea
was a conviction for a violent felony under ACCA.

*Id.* at 228.

Under the *Alston* precedent, it is inappropriate for the
majority to find that Vann "necessarily" pleaded guilty to the
subsection of the Statute (subsection (a)(2)) that it deems a
violent felony under the ACCA. *See United States v. Bethea*,
603 F.3d 254, 259 n.7 (4th Cir. 2010) ("Because the indict-
ment specifies that Bethea escaped while waiting to appear in
court, we recognize that the most plausible explanation for his
specific conduct is that he fled custody, rather than that he
simply failed to report. Under *Shepard*, however, we are
charged with considering whether Bethea's conduct was 'nec-
essarily' violent, not whether his conduct was plausibly or
even likely so."). Indeed, to borrow the *Taylor* analogy uti-
lized in *Alston*, if Vann had gone to trial in the underlying
cases, any resulting conviction could only be used as an
ACCA predicate offense if the jury had returned a special ver-
dict (or answered an interrogatory) specifically convicting
him of violating subsection (a)(2) of the Statute. *See Alston*,
611 F.3d at 228. Put simply, this situation is a far cry from the
*Taylor* hypothetical, where the indictment specifically
charged burglary of a dwelling. *See* 495 U.S. at 602. Instead,
the majority sees fit to engage in the very behavior the cate-
gorical approach is intended to avert: inappropriate judicial
factfinding on appeal. *See id.* at 601 (explaining that categori-
cal approach avoids difficulty associated with pleaded cases
in which "there often is no record of the underlying facts");
*see also Nijhawan v. Holder*, 129 S. Ct. 2294, 2299 (2009)
(explaining that categorical approach "avoids the practical dif-
ficulty of trying to ascertain in a later proceeding, perhaps
from a paper record containing only a citation (say, by num-

ber) to a statute and a guilty plea, whether the offender's prior crime did or did not involve, say, violence" (alteration, omission, and internal quotation marks omitted)).

### III.

If the modified categorical approach could appropriately be used here, and if the PSR and charging documents indeed established that Vann was "necessarily" convicted of violating subsection (a)(2), his underlying convictions would yet fail to qualify as ACCA predicate offenses. Succinctly put, in concluding that a violation of subsection (a)(2) typically involves purposeful, violent, and aggressive conduct, the majority misconstrues the Statute and ignores applicable precedent.

The ACCA was enacted to target "the special danger created when a particular type of offender — a violent criminal or drug trafficker — possesses a gun." *Begay v. United States*, 553 U.S. 137, 146 (2008). As a result, the ACCA focuses on purposeful, violent, and aggressive crimes that are "potentially more dangerous when firearms are involved" — the type of crimes that are "characteristic of the armed career criminal, the eponym of the statute." *Id.* at 145 (internal quotation marks omitted). As the Supreme Court has emphasized, the ACCA targets criminal conduct related to "violent criminal use of firearms," and not every crime that "can be said to present a serious potential risk of physical injury." *Id.* at 147 (internal quotation marks omitted); *see also id.* at 142 (emphasizing that ACCA "covers only *similar* crimes [to arson, burglary, offenses involving explosives, and extortion], rather than *every* crime that 'presents a serious potential risk of physical injury to another'" (quoting 18 U.S.C. § 924(e)(2)(B)(ii))). Accordingly, to qualify as an ACCA predicate offense under the "residual provision" of § 924(e)(2)(B)(ii) — the clause at issue here — the predicate offense must be "'roughly similar, in kind as well as in degree of risk posed,' to the enumerated offenses." *United States v.*

*White*, 571 F.3d 365, 369 (4th Cir. 2009) (quoting *Begay*, 553 U.S. at 143)).

A.

An appropriate assessment of the Indecent Liberties Statute and its treatment by the North Carolina courts demonstrates that a violation thereof is neither similar in kind nor similar in degree of risk to the crimes enumerated in the ACCA. To obtain a conviction under the Statute as initially enacted, prosecutors were obliged to prove the occurrence of an unnatural sexual act, such as incest or a crime against nature. *State v. Banks*, 370 S.E.2d 398, 407 (N.C. 1988). In 1975, the North Carolina legislature revised the Statute, removing the requirement of an unnatural sexual act. *See id.* The resulting Statute "encompass[es] more types of deviant behavior" than North Carolina's other sex-related statutes, in order to provide children "broader protection than available under [those] statutes." *State v. Etheridge*, 352 S.E.2d 673, 682 (N.C. 1987). Accordingly, a variety of actions, performed at a variety of distances from a minor, are now prohibited by the Statute. *See, e.g.*, *State v. McClees*, 424 S.E.2d 687, 689-90 (N.C. Ct. App. 1993) (collecting cases and concluding that secretly videotaping disrobing teenager violates Statute). The scope of the Statute and the "breadth of conduct" it proscribes reflect North Carolina's concern for the potential "psychological damage" indecent liberties can cause. *State v. Every*, 578 S.E.2d 642, 648 (N.C. Ct. App. 2003).

As with such North Carolina statutes as "Opposite sexes occupying same bedroom at hotel for immoral purposes; falsely registering as husband and wife," N.C. Gen. Stat. § 14-186, the Indecent Liberties Statute is classified as an offense against public morality and decency. *See* N.C. Gen. Stat. Ch. 14, Subch. VII ("Offenses against Public Morality and Decency"); *cf. id.*, Subch. III ("Offenses against the Person"). Thus, "[i]ndecent liberties are defined as such liberties as the common sense of society would regard as indecent and

improper." *McClees*, 424 S.E.2d at 690 (internal quotation marks omitted). Moreover, as used in the Statute, "lewd" and "lascivious" are defined "according to their plain meaning in ordinary usage." *State v. Hammett*, 642 S.E.2d 454, 458 (N.C. Ct. App. 2007). The North Carolina courts define the terms "lewd" as "inciting to sensual desire or imagination" and "lascivious" as "tending to arouse sexual desire." *State v. Wilson*, 361 S.E.2d 105, 108 (N.C. Ct. App. 1987) (internal quotation marks omitted). Furthermore, the North Carolina courts have emphasized that one can take "indecent liberties *with* children" without being in the actual presence of the minor. *See McClees*, 424 S.E.2d at 689-90 (explaining implications of "with" in Statute). The breadth of the Statute has, not surprisingly, engendered numerous challenges on the grounds that it is unconstitutionally vague. *See, e.g.*, *State v. Elam*, 273 S.E.2d 661, 664-65 (N.C. 1981) (rejecting vagueness challenge); *State v. Hicks*, 339 S.E.2d 806, 808 (N.C. Ct. App. 1986) (citing cases upholding Statute's constitutionality); *State v. Turman*, 278 S.E.2d 574, 575 (N.C. Ct. App. 1981) (rejecting vagueness and other constitutional challenges).

In assessing the Indecent Liberties Statute under the ACCA, reference to its companion statute, N.C. Gen. Stat. § 14-202.2 (entitled "Indecent liberties between children"), is helpful. The companion statute, which proscribes indecent liberties between those aged sixteen and younger who are at least three years apart in age, is almost identical to the Statute. Nevertheless, a conviction obtained under § 14-202.2 — a misdemeanor — could not constitute an ACCA predicate offense because juvenile offenses only qualify if they involve the use of a firearm, knife, or destructive device. *See* 18 U.S.C. § 924(e)(2)(B). Given that the same behavior is proscribed by both statutes, the following hypothetical reveals the illogic of treating the Indecent Liberties Statute as a "violent felony" under the ACCA. Two children, one initially aged fifteen and the other eleven, engage in sexting (texting of sexually suggestive pictures) both before and after the elder's sixteenth birthday. *Cf. State v. Kistle*, 297 S.E.2d 626

(N.C. Ct. App. 1982) (taking sexually suggestive photograph constitutes subsection (a)(2) indecent liberty). The sexting incidents occurring prior to the elder's sixteenth birthday cannot form the basis for an ACCA predicate offense, but such incidents on or subsequent to the child's birthday, under the majority's logic, are so violent, aggressive, and purposeful — so connected to the behavior of an armed career criminal — that they would be ACCA predicate offenses.

## B.

Of course, the conclusion spelled out above is entirely illogical; it is also directly contrary to the Supreme Court's warning that the ACCA does not cover every offense with a potential risk of injury. As we have explained, for purposes of an ACCA analysis, "[a] roughly similar degree of risk means that the prior crime, like the enumerated offenses, creates an immediate, serious, and foreseeable physical risk that arises concurrently with the commission of the crime itself." *White*, 571 F.3d at 370 (alterations and internal quotation marks omitted). Moreover, "[i]n order to be deemed similar in kind, the [offense] must categorically involve conduct that is purposeful, violent, and aggressive — the common characteristics of the [ACCA] enumerated offenses." *Id.* (internal quotation marks omitted). The majority, however, has failed to analyze the Statute against these essential criteria.

Just recently, in *United States v. Thornton*, we concluded that a conviction under Virginia's statutory rape statute failed to qualify as an ACCA "violent felony." 554 F.3d 443 (4th Cir. 2009). In so ruling, we explained that "the risks of physical injury associated with adult-minor sexual activity" are insufficient to justify a defendant's "classification as an armed career criminal," and we rejected the proposition that the possibility of constructive force made the statutory rape offense similar to the ACCA enumerated crimes. *Id.* at 447-48.[8] In

---

[8]The Indecent Liberties Statute does not involve only adult-child behavior, nor does it implicate the parent-child relationship — a context in

conducting our analysis, we were attentive to the Virginia Criminal Code, recognizing that its "structure shows that the Virginia General Assembly considers forcible and nonforcible sexual offenses to present different risks that are punishable in different ways." *Id.* at 448. Explaining that the ACCA "enumerated crimes create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crimes themselves," and acknowledging that "nonforcible adult-minor sexual activity can present grave physical risks to minors," we recognized that "such risks are not sufficiently similar, in kind as well as in degree of risk posed to the examples of burglary, arson, extortion, and crimes involving explosives." *Id.* at 449 (internal quotation marks omitted). Indeed, Judge Duncan emphasized that such a statutory rape conviction "is not associated with a likelihood of future violent, aggressive, and purposeful armed career criminal behavior and cannot constitute a violent felony under the ACCA." *Id.* (internal quotation marks omitted).

Faithful application of our *Thornton* precedent illustrates the error of treating a North Carolina indecent liberties conviction as a violent felony. First, much of the justification for the majority's position is the potential for psychological harm associated with indecent liberties. *See also United States v. Pierce*, 278 F.3d 282 (4th Cir. 2002). Psychological harm, however, is insufficient under the ACCA: the predicate offense must "create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of

which North Carolina permits an inference of constructive force. *See Etheridge*, 352 S.E.2d at 681 (inferring lack of consent, in context of second-degree sexual offense by father, from parent-child relationship); *State v. Hardy*, 409 S.E.2d 96, 99 (N.C. Ct. App. 1991) (same; second-degree rape by stepfather); *cf. United States v. Pierce*, 278 F.3d 282, 290 (4th Cir. 2002). Instead, the Statute proscribes behavior between teenagers (e.g., individuals aged nineteen and fourteen) as well as between teenagers and preteens (e.g., those aged sixteen and eleven) and between young adults and teenagers (e.g., people aged twenty and fifteen).

the crime[ ]" itself. *Thornton*, 554 F.3d at 449; *cf. Pierce*, 278 F.3d at 291 (explaining that sexual touching "may not cause injury" and thus the "violence . . . was not necessarily the touching"). Second, even a cursory examination of North Carolina's criminal code reveals the enormity of the distinction between indecent liberties and sexual offenses, let alone forcible sexual offenses. North Carolina devotes a subchapter in its criminal code to "Offenses against the Person," and has a specific article therein devoted to "Rape and Other Sex Offenses." *See* N.C. Gen. Stat. Ch. 14, Subch. III, art. 7A. Within this article, North Carolina further differentiates between sex offenses committed by force, *see id.* § 14-27.3, second-degree rape (encompassing "vaginal intercourse . . . [b]y force and against the will of the other person"), and those committed without force, *see id.* § 14-27.7, intercourse and sexual offenses with certain victims (providing "[c]onsent is not a defense to a charge under this section"), and § 14-27.7A, statutory rape (prohibiting intercourse except when parties are married). By contrast, the Indecent Liberties Statute is codified in the subchapter devoted to "Offenses against Public Morality and Decency," immediately after the crime of "Secretly peeping into room occupied by another person," *id.* § 14-202. *See id.*, Subch. VII. It thus strains the bounds of credulity to classify indecent liberties as a violent felony when statutory rape, classified as an "Offense[ ] against the Person" and as a more serious felony than indecent liberties, fails to so qualify. *See id.* § 14-27.7A; *see generally Thornton*, 554 F.3d. 443. That the same behavior could form the basis of a conviction under both statutes further illustrates the error of treating indecent liberties as a violent felony. *See State v. Baker*, 426 S.E.2d 73, 76 (N.C. 1993) (explaining that sexual penetration can constitute indecent liberty, rape, and/or sexual offense).

## C.

As I have emphasized, in conducting an ACCA analysis we are obliged — pursuant to settled principles of federalism —

to consider whether the *elements* of a crime, as defined by state law, are such that it qualifies as an ACCA predicate offense. *See Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010); *James v. United States*, 550 U.S. 192, 202 (2007). Subsection (a)(2) proscribes "lewd" and "lascivious" acts, that is, behavior "inciting to sensual desire or imagination" or "tending to arouse sexual desire." *Wilson*, 361 S.E.2d at 108 (internal quotation marks omitted). The majority, however, fundamentally misconstrues subsection (a)(2), which properly provides that an individual (at least sixteen years of age and five years older than the minor) commits an indecent liberty if he "[w]illfully commits or attempts to commit any lewd or lascivious act upon *or with* the body or any part or member of the body of any child of either sex under the age of 16 years." N.C. Gen. Stat. § 14-202.1(a)(2) (emphasis added). More specifically, the majority's assessment that subsection (a)(2) "requires [a] physical[ ] act against the body of a child," *ante* at 9, demonstrates a failure to fully appreciate the Indecent Liberties Statute's "or with" language. In so doing, the majority fundamentally alters the character of the statutory prohibition because, under North Carolina law, both actual and constructive presence are denoted by use of the statutory term "with." *See, e.g.*, *McClees*, 424 S.E.2d at 689-90 (explaining that "with" encompasses both actual and constructive presence); *Turman*, 278 S.E.2d at 575 ("The word 'with' is not limited to mean only a physical touching.").

North Carolina has specifically rejected the assertion that a violation of (a)(2) requires the touching of a child, let alone "any sexual contact with the child's body." *Kistle*, 297 S.E.2d at 628; *see Hammett*, 642 S.E.2d at 459 (rejecting contention "that, in order to be convicted under [N.C. Gen. Stat.] § 14-202.1(a)(2), the accused must physically touch the victim"). Instead, the Indecent Liberties Statute encompasses a broader range of conduct than North Carolina's sexual acts statutes, including those that specifically target "sexual contact with a child's body," such as "Rape of a child; adult offender," N.C. Gen. Stat. § 14-27.2A, "Sexual offense with a child; adult

offender," *id.* § 14-27.4A, and "Statutory rape or sexual offense of a person who is 13, 14, or 15 years old," *id.* § 14-27.7A. Accordingly, "masturbating in the presence of" a minor "falls under the rubric of an activity covered by [N.C. Gen. Stat.] § 14-202.1(a)(2)." *Hammett*, 642 S.E.2d at 459. Further examples of subsection (a)(2) offenses include "french kissing," whether merely attempted or actually consummated. *See Banks*, 370 S.E.2d at 407 (actual); *Hammett*, 642 S.E.2d at 458-59 (attempted). Indeed, simply photographing an unclothed child violates subsection (a)(2). *See Kistle*, 297 S.E.2d at 628 (rejecting contention that "the taking of a photograph of a child does not constitute the commission of a lewd and lascivious act upon or with the body, or a part or member thereof"). Because a violation of subsection (a)(2) clearly does not "create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crime[ ]" itself, it cannot constitute an ACCA predicate. *Thornton*, 554 F.3d at 449.[9]

### D.

In my view, it is nonsensical to assert that a violation of the Indecent Liberties Statute — which mandates neither sexual acts nor the touching of a minor — is more violent than statu-

---

[9]In this regard, the majority errs in comparing the Statute to Vermont's sexual assault of a child statute, which specifically requires sexual relations. *See United States v. Daye*, 571 F.3d 225 (2d Cir. 2009); *see also United States v. McDonald*, 592 F.3d 808, 815 (7th Cir. 2010) (explaining that *Daye* relied "largely on pre-*Begay* circuit precedents" and failed to "explain [its] generalization about the prevalence of the use of force in sex offenses"). A better guide for our analysis is *United States v. Dennis*, where the Tenth Circuit determined that Wyoming's indecent liberties statute does not qualify as a crime of violence, recognizing that it is not similar in degree of risk to the enumerated crimes because of the breadth of conduct it proscribes. *See* 551 F.3d 986, 989-90 (10th Cir. 2008); *see also McDonald*, 592 F.3d at 815 (concluding that Wisconsin's second-degree sexual assault statute is not a crime of violence because its "breadth" "makes it difficult to conclude that the offense is typically 'violent and aggressive'").

tory rape, which specifically requires sexual acts with a minor. *See ante* at 19-20 (seeking to distinguish Virginia's carnal knowledge statute and concluding that "a typical violation of the North Carolina statute is much more likely to be marked by violent and aggressive conduct than an ordinary violation of the Virginia statute considered in *Thornton*"). It is also notable that the majority opinion is lacking in supporting authorities. *See, e.g.*, *id.* at 19 (claiming, without support or elaboration, that indecent liberties offense is roughly similar in kind to enumerated offenses "in a way that the crime of driving under the influence at issue in *Begay* was not"); *id.* at 19 (speculating, absent authority, that "given the age differential and the resulting power disparity between the defendant and the child, the [indecent liberties] offense will naturally tend to involve coercive conduct that can readily escalate to physical violence"). Moreover, the majority's resort to specific North Carolina cases in support of its contention that "a large number of [subsection (a)(2)] violations involve the use of horrific force," is unavailing. *See id.* at 19. It is the bedrock principle of the categorical approach that only the elements of the offense — rather than the factual circumstances of a specific violation — can be considered. *See Nijhawan v. Holder*, 129 S. Ct. 2294, 2299 (2009) (explaining categorical approach, as distinct from circumstance-specific approach). One solid reason for the ban on considering the factual circumstances of a particular offense is that, "if a guilty plea to a lesser, [nonqualifying] offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to [a qualifying offense]." *Taylor v. United States*, 495 U.S. 575, 601-02 (1990). It is likewise unfair to apply sentence enhancements simply because more heinous crimes often satisfy the elements of an earlier crime on which a defendant was convicted. *See Baker*, 426 S.E.2d at 76.

Thus, in assessing whether a violation of the Indecent Liberties Statute "typically" involves violent, aggressive, and purposeful conduct, we must examine the Statute itself, which

is best exemplified by state court decisions involving only indecent liberties convictions — as opposed to those involving rape, murder, and incest, upon which the majority relies. Compounding the problematic nature of the majority opinion is that the "horrific" decisions upon which the majority relies involve violations of subsection (a)(1), rather than subsection (a)(2). *See ante* at 19; *cf. State v. Rhodes*, 361 S.E.2d 578, 580 (N.C. 1987) (examining subsection (a)(1)); *State v. Ridgeway*, 648 S.E.2d 886, 895 (N.C. Ct. App. 2007) (examining whether "purpose of arousing or gratifying sexual desire," specified in subsection (a)(1), had been established); *State v. Jones*, 393 S.E.2d 585, 589-90 (N.C. Ct. App. 1990) (discussing jury instruction on "immoral, improper or indecent liberty").

To paraphrase *Thornton*, the Indecent Liberties Statute, including subsection (a)(2), is not "sufficiently similar to the enumerated crimes" of arson, burglary, extortion, and offenses involving explosives "in kind or in degree of risk to constitute a violent felony." 554 F.3d at 449. Put simply, although a violation of subsection (a)(2) is reprehensible, it is not the violent, aggressive, and purposeful behavior associated with violent use of firearms and armed career criminals. Therefore, it does not constitute an ACCA predicate offense.

IV.

Pursuant to the foregoing, I would rule that a violation of the Indecent Liberties Statute is not categorically a "violent felony" under the ACCA, and that the district court thus erred in treating Vann's contested convictions as ACCA predicate offenses. As a result, I would vacate the judgment and remand for resentencing.

I respectfully dissent.